NOT FOR PUBLICATION                                    (Docket No. 4)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____ :
                                    :
DAGOBERTO BOLANOS CERVANTES,        :
                                    :
            Respondent,             :    Civil No. 04-3788 (RBK)
     v.                             :    **OPINION**
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            Petitioner.             :
_____:

**KUGLER**, United States District Judge:

   This matter comes before the Court on motion by Respondent United States of America ("Respondent") to dismiss the petition of Dagoberto Bolanos Cervantes ("Petitioner") for post conviction relief under 28 U.S.C. § 2255. For the reasons set forth below, Respondent's motion will be granted.

**I.   Background**

   On January 10, 2003, Petitioner pled guilty before the Honorable Stephen M. Orlofsky to conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846. Stipulation 10 of Schedule A to Petitioner's signed plea agreement includes a waiver of appeal or collateral attack, providing that:

   Cervantes knows that he has, and voluntarily waives,

> the right to file any appeal, any collateral attack, or any other writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or less than 31. The United States will not file any appeal, motion, or writ that challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or greater than 29. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so. To the extent that any appeal, collateral attack, writ, or motion is barred by this paragraph, the parties agree that it should be dismissed.

(Stip., Resp. Mot. Ex. 2. at 7.)

The waiver of appeal and collateral attack was addressed again during Petitioner's plea colloquy with Judge Orlofsky:

> THE COURT: Do you understand, Mr. Cervantes, that stipulation ten provides that you are voluntarily waiving your right to file any appeal, any collateral attack or any other writ or motion after sentencing in this case, including, but not limited to an appeal under Title 18 United States Code Section 3742 or a motion under 28 U.S.C. Section 2255 which challenges this Court's determination or imposition of the offense level, if the total offense level determined by this court is equal to or less than 31? Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: That means that if I find that the total offense level in this case is 31 or less, you cannot take an appeal, you

|  |  |
|---|---|
|  | cannot file what's called a 2255 motion or any other writ or motion that you can think of, do you understand that? |
| THE DEFENDANT: | Yes. |

(Tr. Jan. 10, 2003, Resp. Mot. Ex. 4. at 10-11.)

On August 8, 2003, Petitioner came before this Court for sentencing. The Court determined that petitioner's total offense level was 25 and sentenced Petitioner to a 120 month term of imprisonment, the statutory mandatory minimum. Petitioner did not appeal his conviction or sentence to the United States Court of Appeals for the Third Circuit.

On August 9, 2003, Petitioner filed the above-captioned petition pursuant to 28 U.S.C. § 2255. In particular, Petitioner contends that he signed the plea agreement under the misconception that his sentence would be in the guideline range of 46 to 57 months. He also claims ineffective assistance of counsel on the grounds that he received a greater sentence than his three co-conspirators. Lastly, he argues that his sentence is rendered invalid by the United States Supreme Court's subsequent decision in Blakely v. Washington, 124 S. Ct. 2531 (2004).

**II. Standard**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is an appropriate vehicle for dismissal of a petition under 28 U.S.C. § 2255. Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002) (affirming dismissal of petition pursuant to Rule

3

12(b)(6)). Dismissal under Rule 12(b)(6) is proper only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In re Rockefeller Ctr. Properties, Inc., Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002); Klein v. General Nutrition Co., 186 F.3d 338, 342 (3d Cir. 1999). The Court must "accept all well-pleaded allegations . . . as true and [] draw all reasonable inferences in favor of the non-moving party." Id. at 215 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). However, the court need not credit a plaintiff's "bald assertions" or "legal conclusions draped in the guise of factual allegations." Id.

**III. Analysis**

Respondent argues that Petitioner's signed stipulation and plea agreement waived his right to bring a collateral attack, including one pursuant to 28 U.S.C. § 2255, if the Court determined his total offense level to be 31 or under. Because the Court ultimately attributed to Petitioner a total offense level of 25, Respondent contends that Petitioner is precluded from bringing the present petition or otherwise attacking his sentence.

Petitioner claims he entered into the plea agreement unknowingly and involuntarily, thereby voiding the agreement. Petitioner does not suggest that he was unaware of the waiver

provision; rather he claims that he signed the agreement under the mistaken belief that his sentence would be limited to 46 to 57 months. (Opp'n at 3.) He contends that his attorney was ineffective in ensuring that he understood the agreement, particularly since Petitioner does not speak English. (Opp'n at 4.) He claims further that "[t]he possibility of receiving 120 month sentence had never been discussed with the defendant by anybody." (Opp'n at 6.)

A voluntary and knowing waiver of appeal and collateral attack, including the right to bring a § 2255 petition, is enforceable. See, e.g., U.S. v. Clark, Slip Copy, 2006 WL 1096157 (3d Cir. 2006). Although the Third Circuit has not directly decided this issue, the Court has recognized "that such waivers have been enforced in other circuits." U.S. v. Wilson, 429 F.3d 455, 461 (3d Cir. 2005) (citing United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001); Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000); Watson v. United States, 165 F.3d 486, 488-89 (6th Cir. 1999); United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994)); see also Williams v. U.S. 396 F.3d 1340, 1342 (11th Cir. 2005) (noting that "every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim

of ineffective assistance of counsel during sentencing").

Petitioner is correct that a plea agreement and accompanying waiver of collateral attack are valid only if entered into "voluntarily and understandingly." Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 244 (1969); United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001) (holding that "waivers of appeal, if entered knowingly and voluntarily, are valid, unless they work a miscarriage of justice"). However, ample evidence in the record belies Petitioner's claim of ignorance as to the possibility of a sentence in excess of 57 months.

Even assuming that Petitioner did not know that the Court could impose a term of imprisonment greater than 57 months at the time he entered into the plea agreement, the record indicates that, by the time of his sentencing before this Court on August 8, 2003, Petitioner knew and understood that he was subject to a minimum sentence of 120 months. At the time of the sentencing hearing, Petitioner's counsel, Justin Levine, Esquire, informed the Court that Petitioner had anticipated application of a safety valve that would limit his sentence to 46 to 57 months. Petitioner's counsel explained that he and Petitioner discovered, subsequent to the signing of the plea agreement, that Petitioner's criminal history points rendered him ineligible for the safety valve and mandated the imposition of the statutory

mandatory minimum of 120 months. Specifically, Petitioner's counsel explained:

> MR. LEVINE: I understand completely [the government's] position [that the statutory mandatory minimum of 120 months applies], and I can't say that it's legally incorrect in any way, shape or form. I have - - I've explained this to Mr. Cervantes, and my - - his position, which he'd like me to express to the Court, is that at the time that he took the plea, he was under the impression that the safety valve would be available to him, and for that reason he felt that he met all the criteria that would allow him to be sentenced below the statutory mandatory minimum . . .
>
> Of course, upon receipt of the presentence report it turns out that he has quite a few relatively minor, in my opinion, violations of law. However, each one of them results in one criminal history point. Obviously he does not meet the criteria there for a safety valve, and I understand that legally the Court is required to sentence him according to statutory mandatory minimum.
>
> It is Mr. Cervantes' position that although that may be the legal status of the law with regard to the guidelines and his case, he would like your Honor to consider equitable aspects of his plea, even though at the time the plea was taken, as is the case in all pleas of guilty, all judges, especially Judge Orlofsky, all judges inform the defendant that the guideline computation is an estimate, is something that is a representation, that may not turn out to be the case at the time of the sentence.
>
> Nonetheless, Mr. Cervantes was under the impression that he would be able to be sentenced according to the guidelines, and not according to the

>           statutory mandatory minimum. He,
>           therefore, is asking me to ask you to
>           take his state of mind into account at
>           the time he took the plea, and sentence
>           him according to the guidelines, not
>           according to the statutory mandatory
>           minimum. . . .

By leave of Court, Petitioner, his counsel, and his interpreter then took a recess to discuss the possibility of withdrawing the guilty plea, but Petitioner nevertheless opted to continue with sentencing. The Court noted:

> THE COURT:    Counsel, if your client desires to
>               withdraw his guilty plea because he
>               feels he was misled as to the penalties
>               he was going to get when sentenced, I
>               prefer to do that now rather than some
>               kind of post conviction relief
>               application form your client. Or habeas
>               petition from your client. If your
>               client thinks he was promised some
>               sentence less than what he's going to
>               get, then I want an application from him
>               and you in writing, and we'll deal with
>               it as we get it before we sentence him.
>
> MR. LEVINE:   May I have a moment please, Judge?
>
> THE COURT:    Yes. If you want to go back for some
>               privacy and talk, if you'd rather - -
>
> MR. LEVINE:   Perhaps that would be best . . .
>
> (Recess.)
>
> THE COURT:    Okay. We last left this with some
>               indication that the defendant wanted to
>               perhaps withdraw his guilty plea. And as
>               I'm sure you explained to him, I wasn't
>               here for the plea, so I don't know what
>               he was told. And if indeed he was told
>               that he was going to get the safety
>               valve, and that's the reason he pled

```
                    guilty, then we will look into this. So
                    tell me what you want to do.

MR. LEVINE:         We certainly appreciate it, Judge. The
                    Defendant's been informed of all the
                    consequences of the - - if he chooses to
                    avail himself of your Honor's very
                    generous offer, . . .
                         Mr. Cervantes had just indicated to
                    me after discussion in the back - -
                    although I speak fluent Spanish, I had
                    the assistance of a Spanish interpreter
                    as well, he's indicated to me that he
                    does not wish to avail himself of that
                    opportunity. He does not wish me to make
                    a motion to withdraw his plea, he does
                    not want to face the possibility of a
                    trial, and he understands that in all
                    likelihood your Honor will be sentencing
                    him to 120 months. He understands that
                    and is prepared to proceed . . .
```

(Tr. Aug. 9, 2003, Resp. Mot. Ex. 5, at 4-6.)

The Court then confirmed Petitioner's desire to persist in his plea directly through Petitioner, by way of an interpreter. Petitioner told the Court:

```
THE DEFENDANT:      I want to thank you for the opportunity
                    that you gave me to consider making an
                    appeal, but now I'm prepared to accept
                    the punishment that you give me. And I
                    also apologize to the Government of the
                    United States and to this City, and I
                    promise you that I won't make the same
                    mistake again.

THE COURT:          Do you understand that when your lawyer
                    was talking to me about the safety valve
                    provisions of the guidelines, he
                    indicated that you thought that you
                    might get the lower sentence under the
                    safety guidelines when you pled guilty?

THE DEFENDANT:      Yes.
```

9

> THE COURT:        And that you could, if you wanted, make
>                   a motion to the Court to throw out your
>                   guilty plea?
>
> THE DEFENDANT: No, I'm prepared to take this decision.
>
> THE COURT:        And you understand that you do not
>                   qualify for the safety valve, and,
>                   therefore, the minimum sentence required
>                   by the law, is a 120 months or 10 years?
>
> THE DEFENDANT: Yes.
>
> THE COURT:        So, you're prepared at this time for me
>                   to sentence you; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT:        And you want to keep your guilty plea;
>                   is that correct?
>
> THE DEFENDANT: Yes.

(Tr. Aug. 9, 2003, Resp. Mot. Ex. 5, at 7-8.)

This record establishes conclusively that Petitioner understood that he faced a minimum sentence of 120 months and that he nevertheless decided to continue with his plea agreement. In light of these proceedings, Petitioner cannot now claim that he was unaware of the possibility of a 120 month sentence.

Finally, Petitioner may also be arguing that his interpreter was inadequate and his acceptance of the plea was therefore unknowing. However, Petitioner does not claim that he did not understand the proceedings; rather he contends that the adequacy of his interpreter was unestablished, since "[t]he Defendant was never informed by the court or the his [sic] attorney to wheather [sic] the interpreter which he was provided fully explained all

10

of the court's colloquy." (Opp'n at 4.)

There is no indication that the translation provided by Petitioner's interpreter was inaccurate or otherwise erroneous. Petitioner never questioned the translation over the course of any of the proceedings, and Petitioner's own attorney spoke "fluent Spanish." (Tr. Aug. 9, 2003, Resp. Mot. Ex. 5, at 6.) Perhaps most importantly, Petitioner's own exchanges with the Court, provided above, evidence an understanding of the proceedings unimpeded by any significant language barrier.

Accordingly, Petitioner's conjectural challenge to the quality of his interpreter does not suffice to invalidate his guilty plea, particularly given the absence of any evidence, assertions, or direct claims of inadequate translation. See, e.g., U.S. v. Alvarado, 943 F.2d 58 (10th Cir. 1991) (upholding dismissal of habeas petition without evidentiary hearing where petitioner contests translation by interpreter during guilty plea).

Petitioner has not established that he entered into his plea agreement involuntarily or without requisite knowledge and understanding of the agreement, nor has he demonstrated that any miscarriage of justice would flow from the enforcement of the agreement.[1] The waiver of appeal and collateral attack stipulated

---

[1] Nor does the subsequent Supreme Court decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), act to invalidate Petitioner's plea agreement. See U.S. v. Lockett, 406 F.3d 207

to in Petitioner's plea agreement are therefore valid and enforceable, and Respondent's motion to dismiss will be granted. The accompanying Order shall issue today.

Dated: June 6, 2006          s/Robert B. Kugler
                             ROBERT B. KUGLER
                             United States District Judge

---

(3d Cir. 2005) (holding that the Supreme Court's later opinion in United States v. Booker, 543 U.S. ---- (2005), does not affect plea agreement). Rather, the "waiver of an appeal will not be invalidated merely because unanticipated events occur in the future." Id. at 213.